```
                   UNITED STATES DISTRICT COURT
                      DISTRICT OF CONNECTCUT


FERNANDO PARETE,                  :
  plaintiff,                      :
                                  :
v.                                : Civil No. 3:10CV625(AVC)
                                  :
THE STOP & SHOP SUPERMARKET       :
COMPANY LLC,                      :
  defendant.                      :
```

### RULING ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

This is a wrongful termination case in which the plaintiff, Fernando Parete, claims that the defendant, The Stop & Shop Supermarket Company LLC (hereinafter "Stop & Shop"), terminated his employment in retaliation for Parete's complaints concerning employees working without getting paid. It is brought pursuant to the Fair Labor Standards Act (hereinafter "FLSA") and common law tenets concerning wrongful termination and promissory estoppel. Stop & Shop has filed a motion for summary judgment, arguing that it is entitled to judgment on all of the plaintiff's claims. For the reasons that follow, the motion is granted.

### FACTS

An examination of the complaint, pleadings, local rule 56 statements, exhibits accompanying the motions for summary judgment and responses thereto, discloses the following undisputed facts:

Parete was a store manager at Stop & Shop in its New York Metro region from 2002 through July 31, 2009.  As part of his duties, Parete was "'in charge of the entire store function and 'accountable for the results of the store,' including, but not limited to, sales, cleanliness, customer satisfaction, employees, employee relations, and compliance with legal issues."  He supervised "between 160 and 190 exempt and non-exempt employees," "had 'ultimate oversight responsibility for the cash office,'" and "was responsible for ensuring that all of his subordinates followed and complied with Stop & Shop's policies and procedures."  Parete was also "responsible for monitoring and controlling weekly payroll processes, including ensuring accuracy in reporting and overtime control."  Although Parete admits that he "was responsible for ensuring that his store complied with all federal, state, and local laws," "he was not knowledgeable on all federal state and local laws pertaining to running a store . . . ."  Parete "was 'the head in charge' who oversaw, and was responsible for, the entire store."

In March of 2009, "Stop & Shop discovered a significant cash shortage in [Parete's] store in East Haven, Connecticut."  After an investigation into the matter, Stop & Shop determined that the cash office manager in that store, "Josephine Perry allegedly stole approximately $140,000."

Stop & Shop's "time card policy" states that employees must use time cards to record their hours and sign the card at the end of each week. Parete "denied any knowledge of Ms. Perry working 'off the clock.'" Parete was responsible, as store manager, "to ensure that associates put their time on the clock that they worked."

After the investigation into Perry's theft, "District Manager Enzio Monaco and Regional Vice President John Stobierski met with [Parete] to discuss the investigation results, which included discovery of 'serious Company violations with accounting and control of funds" and a "lack of Management controls and good management judgment on [Parete's] behalf."[1] "The memorandum memorializing the meeting reflects that:

> **[Mr. Stobierski] told [Plaintiff] that his lack of management controls and poor judgment in giving the bookkeeper the ability to work when she wanted, *which included off the clock on a couple of occasions* was unacceptable.** John told [Parete] that he would be passed on his next review. It also stressed that in his new assignment that he stay involved and visible in the Cash Office to assure that all Security and Accounting procedures are in place along with all of the Company policies. **[Parete] was told that any further issues concerning his management controls or his judgment would result in further disciplinary action up to and including termination."**

Parete stated he was aware it was unacceptable for employees to work "off the clock." "As a result of the investigation into the misconduct at the East Haven store, [Parete] was given a

---

[1] Parete further states that none of Perry's supervisors knew she was stealing and that Stop & shop "never figured out how Ms. Perry accomplished the theft."

3

disciplinary warning and was transferred to Stop & Shop's store in Trumbull, Connecticut." Parete disputes that his transfer was disciplinary or that he had any "misconduct" with respect to the theft.

Following the transfer, Parete wrote the following email to senior vice president Ron Onorato, Stobierski and Monaco:

A sign of great company like ours is based on the character of it's [sic] leaders. I want to take this moment to say to all of you THANK YOU!!! Your decision and help has given me even a stronger resolve to do more for our company

P.S I love you ALL!!!

"Given the significant theft at the East Haven store, along with the discovery of compliance issues at other stores, Mr. Onorato addressed his entire management team to reiterate the importance of following Company policy." Parete's "new District Manager, Cindy Flannery, also reminded him that he must follow Company policy following his transfer."

During May 2009 Department Managers' meetings, Parete states that he said "'I am a store manager who pays everyone for every second they work,' and 'I expect everyone to punch in and punch out and not to work on their own time.'" Grocery store manager George Constantinidi attended one of these meetings and "punched out" before the meeting. Parete and Flannery told him that the meeting was work time and that he should be "punched in" for that time.

In June 2009, Parete told Flannery "that people aren't getting paid, and I'm not going to allow them working [sic] on their own time." Parete states that Flannery said nothing in response.

Less than three months after Parete's transfer to the Trumbull store, he prepaid three union employees. An auditor, Robert Scott, concluded as follows with respect to the alleged prepayment:

> The following information was revealed to me about the timecards of 3 associates in Store #620 by Julie Sabo the payroll clerk.
>
> Fred Parete the Store Manager directed the payroll clerk to pay 3 associates in advance because he was making very good payroll for week ending 7/11/09. I was told that he knew . . . that payroll would not be as good the following week so he paid these people in advance. These three associates were to work off the clock for w/e 7/18/09. One of those associates was in fact on vacation and worked on Sunday 7/12/09 off the clock. One of these associates was the payroll clerk. . . .
>
> The payroll clerk created paper timecard to support the hours that she would be working during the week in fear that she would have put her job in jeopardy but those punches obviously do not match what was added w/e/ 7/11/09. . . .

Parete states that Stop & shop regularly prepaid employees and that he was never trained that prepaying employees was against company policy. Payroll clerk Julie Sabo stated that she knew prepayment was contrary to Stop & Shop policies and in her years of employment with Stop & Shop, no one ever instructed her to "'prepay' employees, as [Parete] did." Parete states, however,

that he was trained to "prepay by 'many' store managers and that he himself was prepaid when he was a union employee."[2] Parete admits that he prepaid employees in order for his payroll numbers to "come closer to the budget that [he was] actually expected to meet."

"The audit also revealed that [Parete] had misused 'store safety cards,' which are cash gift cards awarded to stores for achieving safety-related goals." Parete states that he used the cards for "business purposes." Although Stop & Shop alleges Parete used the "cards to pay an employee's wages, to reimburse an employee for business expenses, and to fund a Department Managers meeting," in violation of company policy, Parete states that Stop & Shop's policy was not "clearly promulgated."

Onorato, Stobierski and Spinella made the decision to terminate [Parete's] employment. Parete further stated that his district manager, Cindy Flannery, "initiated the termination discussion." "Executive Vice President of Sales & Operations William Holmes and Vice President of Human Resources Gail Jordan approved" the decision to terminate Parete. When he was told that he was being terminated, Parete responded that Perry, who was accused of stealing from the East Haven store, had not even

---

[2] "Store manager Robert McDermott testified that he occasionally 'prepaid' employees as a Stop & Shop Store Manager in the 1980s, but 'back then it was a different world,' and he never engaged in the practice after 1992 because the Company 'made sure' it did not happen." Parete states that McDermott's manager, Ed Ferraro, told him to discontinue the practice of prepaying employees and that Ferraro was never Parete's manager.

been arrested.  Although "[n]one of the people who made the decision to terminate [Parete's] employment were aware of [his] alleged statements to Flannery," Parete states that it was Flannery who "initiated the termination conversation and she who recommended Mr. Parete's termination."  Stop & Shop terminated Parete less than two months after his statements to Flannery.

Stop & Shop cites five examples of other store managers it terminated from January 2007 through December 2009, for violations of company policy similar to Parete's alleged violations.  Parete distinguishes each of these terminations based upon the facts surrounding those managers.

Stop & Shop's code of ethics provides, in pertinent part that "its purpose is to '[p]romote compliance with applicable governmental rules and regulations,' and 'foster a culture of honesty and accountability and an atmosphere where associates can report their concerns and cooperate fully with investigators without fear of retaliation.'"  It further states that Stop & shop "will not retaliate or permit retaliation against an Associate who . . . reports a suspected violation of the Code in good faith."

With respect to incentive compensation, the plaintiff's plan provided that he must be employed on the last day of the fiscal year in order to be eligible for incentive compensation. The plan also provided that if Stop & Shop terminated Parete's

employment for violating company policy, it was not obligated to pay incentive compensation.  Parete was not employed on the last day of the fiscal year.

## **STANDARD**

A motion for summary judgment may be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).

Summary judgment is appropriate if, after discovery, the nonmoving party "has failed to make a sufficient showing on an essential element of [its] case with respect to which [it] has the burden of proof."  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  "The burden is on the moving party 'to demonstrate the absence of any material factual issue genuinely in dispute.'"  Am. Int'l Group, Inc. v. London Am. Int'l Corp., 644 F.2d 348, 351 (2d Cir. 1981) (quoting Heyman v. Commerce and Indus. Ins. Co., 524 F.2d 1317, 1319-20 (2d Cir. 1975)).

A dispute concerning material fact is genuine "if evidence is such that a reasonable jury could return a verdict for the nonmoving party."  Aldrich v. Randolph Cent. Sch. Dist., 963 F.2d 520, 523 (2d Cir. 1992) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)).  The court must view all

inferences and ambiguities in a light most favorable to the nonmoving party.  See Bryant v. Maffucci, 923 F.2d 979, 982 (2d Cir. 1991), cert. denied, 502 U.S. 849 (1991).  "Only when reasonable minds could not differ as to the import of the evidence is summary judgment proper."  Id.

## DISCUSSION

### I. Fair Labor Standards Act Claim

Stop & Shop first argues that the evidence fails to support Parete's FLSA claim and, therefore, it is entitled to judgment on that claim.  Specifically, Stop & Shop argues that the plaintiff cannot establish a prima facie case and fails to provide sufficient evidence of pretext. With respect Parete's prima facie case, Stop & Shop states that his complaint to his supervisor regarding employees working on their own time does not amount to "protected activity" under the FLSA.  Stop & Shop states that the evidence of record fails to establish a causal connection between Parete's complaint and his termination.  Even if Parete can establish a prima facie case, Stop & Shop argues that the evidence of record is insufficient to establish that Stop & Shop's stated reason for terminating Parete was a pretext for unlawful discrimination.

In response, Parete argues that the evidence supports his FLSA claim.  Specifically, he argues that pursuant to the Supreme Court's decision in Kasten v. Saint-Gobain Performance

9

Plastics Corp., 131 S. Ct. 1325, 1336 (2011), oral complaints suffice with respect to the requirements of a FLSA prima facie case.  Parete states that the evidence supports causation because of the temporal quality of his complaint and his termination two months later.  Finally, Parete argues that there is sufficient evidence of record to create a material issue of fact with respect to pretext.  Specifically, he states that despite Stop & Shop's stated reasons for terminating him, Parete lost his job because of his complaints regarding unpaid employees and his payment of those employees, which resulted in his store showing an unacceptable increase in overtime hours.  According to the plaintiff, Stop & Shop's real reason for terminating him was the fact that he complained to Flannery.

The "Fair Labor Standards Act of 1938 (Act) sets forth employment rules concerning minimum wages, maximum hours, and overtime pay."  The Act contains an anti-retaliation provision that forbids employers

to discharge or in any other manner discriminate against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to [the Act] . . . .

Kasten v. Saint-Gobain Performance Plastics Corp., 131 S. Ct. 1325, 1329 (2011) (quoting 20 U.S.C. § 215(a)(3)).  "FLSA retaliation claims are subject to the three-step burden-shifting framework established by McDonnell Douglas Corp. v. Green, 411

U.S. 792 (1973).  Thus a plaintiff alleging retaliation under FLSA must first establish a prima facie case of retaliation by showing (1) participation in protected activity known to the defendant, like the filing of a FLSA lawsuit; (2) an employment action disadvantaging the plaintiff; and (3) a causal connection between the protected activity and the adverse employment action."  Mullins v. City of New York, 626 F.3d 47, 53 (2010) (citations omitted).

If the plaintiff establishes a prima facie case of retaliation, "the burden shifts to the defendant to articulate a 'legitimate, non-discriminatory reason for the employment action.'"  Id. (quoting Weinstock v. Columbia Univ., 224 F.3d 33, 42 (2d Cir. 2000)(citation omitted)).  Once the defendant meets its burden, the burden shifts back to the plaintiff to "produce 'sufficient evidence to support a rational finding that the legitimate, non-discriminatory reasons proffered by the defendant were false, and that more likely than not discrimination was the real reason for the employment action.'"  Id. (quoting Weinstock, 224 F.3d at 42 (internal quotation marks, citation and alterations omitted)).

In Lambert v. Genesee Hospital, 10 F.3d 46 (2d Cir. 1993), the second circuit concluded that an informal, oral complaint to a supervisor was not sufficient for purposes of the "protected activity" requirement of the FLSA prima facie case.  Id. at 55.

11

In <u>Kasten v. Saint-Gobain Performance Plastics Corp.</u>, 131 S. Ct. 1325 (2011), however, the Supreme Court held that oral complaints are sufficient to satisfy the FLSA requirement that the plaintiff "file a complaint." <u>Id.</u> at 1335-36. Specifically, the Court stated that "a complaint must be sufficiently clear and detailed for a reasonable employer to understand it, in light of both content and context, as an assertion of rights protected by the statute and a call for their protection. This standard can be met, however, by oral complaints, as well as by written ones." <u>Id.</u> at 1335. The Court went on, however, to specifically state that it declined to address the issue of whether such complaints to a private employer, as opposed to a government entity, would suffice. <u>Id.</u> at 1336.

Parete's statements to Flannery with respect to his concern that Stop & Shop workers were not being compensated for all of the time they worked, fail to satisfy the prima facie case requirements for an FLSA claim. Although the Court recognized the sufficiency of oral complaints in <u>Kasten</u>, it did not address whether such complaints may be made to a supervisor in the private employment context. Therefore, this court remains bound by that part of the second circuit's holding in <u>Lambert</u> that the FLSA "does not encompass complaints made to a supervisor."

Lambert, 10 F.3d at 55.[3]  Accordingly, Parete has failed to make out a prima facie case of retaliation under the FLSA and Stop & Shop's motion for summary judgment with respect to that count is granted.

## II. C.G.S Section 31-51m Preemption re: Wrongful Termination and Promissory Estoppel Claims

Stop & Shop next argues that Parete failed to establish a claim for wrongful termination.  Specifically, Stop & Shop argues that Parete has failed to state an improper reason for his dismissal that violates an important public policy and that he is otherwise without a remedy.  Stop & Shop also argues that Parete fails to sufficiently state a claim for promissory estoppel.  Specifically, Stop & Shop argues that Parete has failed to state a claim for promissory estoppel because it did not make a requisite "clear and definite promise" on which Parete could have relied.

Parete responds that he has sufficiently alleged a violation of public policy and that he is otherwise without a remedy.  Specifically, Parete argues that if the court finds that Parete has failed to state a claim under the FLSA, he does

---

[3] Other district courts in this circuit have also recognized that Lambert's holding, with respect to the insufficiency of complaints to private employer supervisors, is controlling after the Supreme Court's decision in Kasten, because the Court did not address the issue.  See Neviaser v. Mazel Tec, Inc., No. 1:12-CV-48, 2012 U.S. dist. LEXIS 104974, at * 4-6 (D. Vt. July 25, 2012); Duarte v. Tri-State Physical Med. & Rehab., P.C., No. 11-CV-3765(NRB), 2012 U.S. Dist. LEXIS 96249, at *8-9 (S.D.N.Y. July 10, 2012); Ryder v. Platon, No. 11-CV-4292(JFB)(ARL) 2012 U.S. Dist. LEXIS 87050, at *22 (E.D.N.Y. June 19, 2012).

not have a remedy other than his common law wrongful termination claim.  Parete further argues that he has sufficiently stated a claim for promissory estoppel.  Specifically, he argues that when he reported unlawful conduct to Flannery, Parete "reasonably relied upon the Code's promise that he would not be retaliated against to his detriment."

Stop & Shop replies that the so-called "whistle blower statute," contained in C.G.S. section 31-51m, is preemptive of Parete's wrongful discharge and promissory estoppel claims.  See Ridgeway v. Royal Bank of Scotland Group, Civil No. 3:11-CV-976 2012WL1033532 (D. Conn March 27, 2012) (holding that wrongful termination claim was precluded by statutory remedies available under C.G.S. sections 31-51pp and 31-51m).

In order to state a claim for common law wrongful termination, a former employee must show "a demonstrably improper reason for dismissal, a reason whose impropriety is derived from some important violation of public policy."  Sheets v. Teddy's Frosted Foods, Inc., 179 Conn. 471, 475 (1980) The plaintiff must also "establish that he or she was otherwise without a remedy and that permitting the discharge to go unredressed would leave a valuable social policy to go unvindicated."  Datto Inc. v. Braband, No. 3:11-CV-617, 2012 U.S. Dist LEXIS 26178, at *38 (D. Conn. Feb. 29, 2012); see also Burnham v. Karl & Gelb, P.C., 252 Conn. 153, 161-62 (2000)

(recognizing that to maintain a common law claim for wrongful discharge, a plaintiff must not have adequate statutory means to vindicate an important public policy).

In order to make out a prima facie case of promissory estoppel, the plaintiff must establish the following: "(1) a promise (2) which the promisor should reasonably expect to induce action or forbearance (3) on the part of the promisee or third person and (4) which does induce such action or forbearance . . . ." Ferrucci v. Town of Middlebury, 131 Conn. App 289, 305 (2011).  Such a promise "is binding if injustice can be avoided only by enforcement of the promise."  Id.  The plaintiff must establish that the defendant did "something calculated or intended to induce [the plaintiff] to believe that certain fact exist and to act on that belief."  Chotkowski v. State, 240 Conn. 246, 268 (1997) (citation and quotation marks omitted).

Whether or not the plaintiff has presented sufficient evidence of an improper reason for his dismissal or a sufficient promise to raise material issues of fact with respect to his wrongful termination and promissory estoppel claims, the court concludes that Conn. Gen. Stat. section 31-51m[4] preempts those claims.

---

[4] C.G.S. section 31-51m provides, in relevant part, as follows: "[n]o employer shall discharge, discipline or otherwise penalize

"Generally, Connecticut follows the rule that employment is at-will and terminable by either the employee or the employer with impunity." Campbell v. Town of Plymouth, 74 Conn. App 67, 74(2002) (citing Fischer v. Jackson, 142 Conn. 734, 736 (1955)). The Connecticut courts have "recognized an exception to that rule, however, where an 'employee can prove a demonstrably *improper* reason for dismissal, a reason whose impropriety is derived from some important violation of public policy.'" Id. (quoting Sheets v. Teddy's Frosted Foods, Inc., 179 Conn. 471, 475 (1980) (emphasis in original)). The appellate court narrowed such a cause of action, however, "by holding that our public policy exception to the at-will doctrine is available only in cases in which there are no other available remedies . . . ." Id. (citing Adkins v. Bridgeport Hydraulic Co., 5 Conn. App. 643, 648 (1985)). The courts have recognized that "the remedy afforded by state or federal legislation that is meant to address a violation of an important public policy that the termination offends is the exclusive remedy available to former employees and common law wrongful termination causes of action are preempted and precluded." McClain v. Pfizer, 2008WL681481,

---

any employee because the employee . . . reports, verbally or in writing, a violation or a suspected violation of any state or federal law or regulation or any municipal ordinance or regulation to a public body . . . ." Conn. Gen. Stat. section 31-51m(b).

16

at \*3 (D. Conn. March 7, 2008) (citing <u>Burnham v. Karl & Gelb, P.C.</u>, 252 Conn. 153, 169-170 (2000)).

"[T]he Connecticut Supreme Court has held that section 31-51m precludes common law wrongful discharge claims based on violations of the public policy embodied in that provision." <u>Konspore v. Friends of Animals</u>, 2010WL3023820, Civ. No. 3:10-cv-613(MRK) (D. Conn. Aug. 2, 2010) (citing <u>Burnham v. Karl & Gelb, P.C.</u>, 252 Conn. 153, 169-170 (2000)); <u>see also</u> <u>Ridgeway v. Royal Bank of Scotland Group</u>, 2012WL1033532 (D. Conn. Mar. 27, 2012) (citations omitted) (holding that it is well settled that C.G.S section 31-51m, the "whistleblower" statute "preempts all contract and tort claims for wrongful termination based on whistleblowing activity").  Courts have also recognized that claims are preempted even where the plaintiff has not met the requirement in section 31-51m, that he complain to a "public body."  <u>Naser v. Ravago Shared Services LLC</u>, 2010WL3829159, Civil No. 3:10cv573(WWE) at \*4 (D. Conn. Sept. 20, 2010) (dismissing the plaintiff's wrongful discharge claim and recognizing the that "section 31-51m preempts a whistleblower claim even when reports are made to non-public bodies . . ."); <u>see also</u> <u>Parmenter v. Wal-Mart Stores, East, LP</u>, 2007 U.S. Dist. LEXIS 51478 (D. Conn. July 14, 2007) (holding that section 31-

51b preempted common law wrongful discharge claim even where plaintiff failed to meet elements of statute).[5]

In addition, district courts have recognized that section 31-51m preempts other common law claims. McClain v. Pfizer, 2008WL681481, at *3 (D. Conn. March 7, 2008) (preempting breach of contract, wrongful termination and promissory estoppel claims where claims arose from the plaintiff's termination after she voiced concerns over health and safety conditions); see also Konspore v. Friends of Animals, 2010WL3023820, Civ. No. 3:10-cv-613(MRK) (D. Conn. Aug. 2, 2010) (recognizing that section 31-51m "provides the exclusive remedy for [whistleblowing] employees and precludes any common-law actions in either tort or contract."). The McClain court recognized that the common law claims in that case arose from the plaintiff's alleged whistle-blowing activity and, therefore, were preempted.

Similarly here, Parete's alleged whistleblowing activities, in complaining about employees not being paid, are the basis of not only his wrongful termination, but also his promissory estoppel cause of action. Parete's public policy concern regarding the impropriety of terminating employees for whistleblowing activities is addressed by section 31-51m. Based on this statutory remedy, the court does "not need to recognize

---

[5] In Campbell v. Town of Plymouth, 74 Conn. App 67 (2002), the Connecticut appellate court also recognized that although C.G.S. section 31-51m does not contain an exclusivity provision, it "is an exclusive remedy." Id. at 75.

a common-law exception to the at-will employment doctrine." Campbell v. Town of Plymouth, 74 Conn. App 67 (2002).

Therefore, although Parete has not filed a claim pursuant to section 31-51m, the statute is preemptive of his wrongful discharge and promissory estoppel claims. The defendant's motion for summary judgment is granted with respect to those claims.

## CONCLUSION

Stop & Shop's motion for summary judgment (document no. 77) is granted. The clerk is directed to enter judgment for Stop & Shop and close this case.

It is so ordered this 22nd day of March 2013, at Hartford, Connecticut.

                                                    /s/ \
                                              Alfred V. Covello \
                                              United States District Judge